**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* MELISSA SIMMS POWELL, ANGELA HITCHENS, JOSEPH P. PLUMLEY, JR., ED.D., and GLENN W. DOBSON,<br><br>    Plaintiffs,<br><br>v.<br><br>AMERICAN INTERCONTINENTAL UNIVERSITY, INC., a Georgia Corporation, CAREER EDUCATION, CORP., a Delaware Corporation and JOHN DOE NOS. 1-100,<br><br>    Defendants. | Civil Case No:<br>1:08-cv-02277-RWS |

**RELATORS' BRIEF IN OPPOSITION TO DEFENDANTS'
MOTION FOR ASSIGNMENT OF CASE TO MAGISTRATE JUDGE FOR
SUPERVISION OF DISCOVERY, STATUS CONFERENCE, AND ENTRY
OF A PROTECTIVE ORDER**

**I.    INTRODUCTION**

Through a scheme of systemic and substantial fraud upon the United States, Defendants American InterContinental University, Inc. ("AIU") and Career Education Corporation (collectively, "Defendants") received hundreds of millions of taxpayers dollars from the student assistance programs of Title IV of the Higher Education Act of 1965 ("HEA"). As a result of Defendants' actions, in 2008 four

former employees, Relators Melissa Simms Powell, Angela Hitchens, Joseph P. Plumley, Jr. Ed.D., and Glenn W. Dobson ("Relators") brought this action under the False Claims Act, 31 U.S.C. § 3729, *et seq.* to expose this fraud and recover these monies on behalf of the United States Government. After Defendants' repeated attempts to stop this action delayed this matter for over two years, discovery began on January 5, 2011.

Defendants now ask this Court to refer all pretrial matters to a Magistrate Judge, arguing this matter is "too complex," "too controversial," and "too large" for this Court to oversee discovery.[1] Contrary to Defendants' Motion, however, referring discovery matters to a Magistrate Judge will not ensure that this case will proceed in a "smooth, orderly and efficient manner."[2] Under Federal Rule of Procedure Rule 72(a), every ruling of a Magistrate Judge may be appealed to the District Court as matter of right. As was set forth in detail in Relators' Brief in Opposition to Defendants' Motion for Certification of Interlocutory Appeal (DE 63.), **Defendants have established a pattern of systematically appealing each and every adverse decision to delay resolution of claims against them.** Thus,

---

[1] Defs.' Mem. in Supp. of Mot. For Assignment of Case to Magistrate Judge For Supervision Of Disc., Status Conference, And Entry Of Protective Order ("Defs.' Mem.") (DE 80) at 3.

[2] Id.

assigning a Magistrate Judge to oversee discovery would only result in additional delay as Defendants appeal each order of the Magistrate Judge that Defendants believe to be adverse.

Moreover, Defendants' argument that a Magistrate Judge is necessary due to the public interest and controversy stemming from Defendants' conduct is nonsensical. To the degree the public controversy regarding Defendants' activities has any relevance to the current motion, it would weigh in favor of a District Court Judge, rather than a Magistrate Judge, ruling on matters of public importance, especially given Defendants' indication that they will file motions seeking to limit First Amendment rights.[3] Because this Court is perfectly capable of overseeing discovery in this matter, and a Magistrate Judge will not ensure the more efficient resolution of this matter, the Court should deny Defendants' Motion.[4]

---

[3] Defs.' Mem. at 3.

[4] While Defendants' Motion does not ask this Court to enter a protective order, Defendants' counsel subsequently indicated that it was their intent to move for a protective order. As set forth herein Section II (B), *infra,* to the degree the current motion is viewed as a motion for protective order, it must be denied because Defendants have not made the showing required for entry of their proposed protective order.

## II. ARGUMENT AND CITATION OF AUTHORITY

### A. This Court Should Retain Oversight of Discovery

#### 1. This Court's Oversight of Discovery Would Encourage Efficiency and Quicker Adjudication of this Action

Rather than increasing efficiency, referring all discovery matters to a Magistrate Judge would only provide Defendants with one more avenue of delay through the automatic review of a Magistrate Judge's rulings provided by Fed R. Civ. P. 72(a).  To date, in this action, and in those brought on behalf of former AIU students in Fulton County Superior Court, **Defendants[5] have sought appeal of literally every order entered against them.**  Specifically:

- On October 14, 2009, the Court in the matter styled *Deshia Bowman v. American Intercontinental University, Inc., et al.*, Civil Action No. 2009CV170271, in the Superior Court of Fulton County, State of Georgia (the "Bowman Litigation") denied Defendants' request to compel arbitration.  **Defendants filed an emergency motion for interlocutory appeal.**[6]

---

[5] While the Plaintiffs in the state court cases were different from Relators here, the Defendants were the same entities (AIU and CEC) and counsel of record for Defendants in the state court action remains counsel of record for Defendants in this action.

[6] See Emergency Mot. for Recons. or, in the Alternative, for a Certificate of Interlocutory Appeal Pursuant to O.C.G.A. § 5-6-34(B), filed in the Bowman Litigation, a copy of which is attached to Relators' Br. in Opp'n to Defs.' Mot. for Certification of Interlocutory Appeal as Ex. A.  (DE 63.)

- On March 26, 2010, the Court in the matter styled *Tajuansar Diallo et al. v. American Intercontinental University, Inc., et al.*, Civil Action No. 2008CV148209, in the Superior Court of Fulton County, State of Georgia (the "Diallo Litigation") denied Defendants' request to compel arbitration.  **Defendants again sought interlocutory review.**[7]

- On March 29, 2010, the Court in the Bowman Litigation denied Defendants' motion for a protective order in discovery.  **Defendants filed an "emergency" motion for interlocutory appeal**.[8]

- On April 16, 2010, in their reply brief in support of a motion for summary judgment in the Bowman Litigation, **Defendants asked for an order granting an immediate appeal.**[9]

- On June 2, 2010, this Court denied Defendants' motion to dismiss this action, after which Defendants filed:
    **(1) a motion for certification for interlocutory appeal (DE 51);
    (2) a motion for reconsideration (DE 52); and
    (3) a motion to strike (DE 57) – all of which were denied.**[10]

---

[7] See Defs.' Application for Interlocutory Appeal, filed in the Diallo Litigation, a copy of which is attached Relators' Brief in Opposition to Defendants' Motion for Certification of Interlocutory Appeal as Ex. B.  (DE 63.)

[8] See Defs.' Emergency Mot. for Recons. or, in the Alternative, for a Certificate of Interlocutory Appeal, filed in the Bowman Litigation, a copy of which is attached to Relators' Brief in Opposition to Defendants' Motion for Certification of Interlocutory Appeal as Ex. C.  (DE 63.)

[9] See Defs.' Reply in Support of Mot. for Summ J., filed in the Bowman Litigation, p. 9 n. 7, a copy of which is attached a copy of which is attached to Relators' Br. in Opp'n to Defs.' Mot. for Certification of Interlocutory Appeal as Ex. D.  (DE 63.)

[10] (DE 76.)

As their past conduct conclusively establishes, if a Magistrate Judge were assigned to this matter, Defendants would undoubtedly ask this Court to reconsider any order issued by a Magistrate Judge that Defendants consider adverse.[11]  Thus, rather than streamlining or improving the efficiency of the discovery process, assigning a Magistrate Judge will simply build in another avenue for delay.[12]  Because *inefficiency* would result from giving Defendants another excuse for delay, Defendants request for a Magistrate Judge should be denied.

>     **2.     The Public Interest in Defendants' Actions Weighs in Favor of This Court Retaining Control of this Action**

Defendants further argue that a Magistrate Judge should be assigned to this matter because Defendants' conduct is a "current, controversial hot topic."[13]  Defendants argue that this case is simply "too controversial" for this Court to handle.[14]  Defendants thus suggest that a Magistrate Judge be assigned, possibly to

---

[11]  While the standard for obtaining the reversal of a Magistrate Judge's order is high, that would no more deter Defendants than did the standards for reconsideration, for interlocutory appeal, and to strike.

[12]  Moreover, the knowledge that this District Court would address first-hand any questionable discovery conduct would help deter such tactics and lead to more efficient discovery, thereby moving this action to trial more quickly.

[13]  Defs.' Mem. at 2.

[14]  Id. at 3.

enter gag orders that would ban any speech regarding this matter that Defendants consider embarrassing.[15]

It is true that Defendants' conduct is part of a public controversy. The for-profit education sector, of which Defendant CEC is one of the largest members, has grown exponentially in recent years and now receives more than **$26 billion** in taxpayer funds through HEA student loan and grant programs.[16] At the same time, 25% of students at for-profit schools default on their loans within three years of leaving school.[17]

This default rate, and the fraudulent actions taken by for-profit schools to receive Title IV funds, have led to public concern regarding whether such schools focus more on obtaining Title IV funds than on providing students with an

---

[15] Id. at 4.

[16] See statement by United States Senator Tom Harkin, Feb. 7, 2011, Cong. Rec. S600 ¶ 2, attached as Ex. A.

[17] See id. at S600 ¶ 3. For context, for-profit schools enroll about 10 percent of higher education students but account for 47 percent of federal student loan defaults. Id. at S602 ¶ 1.

education enabling them to repay their loans.[18] As a result, last year, committees in both the United States House of Representatives and the United States Senate held hearings to investigate for-profit schools' participation in HEA Title IV programs.[19] One committee, the United States Senate's Health, Education, Labor, and Pensions Committee (the "Senate HELP Committee"), has held repeated hearings on the conduct of for profit schools such as those run by Defendants. As a result, the chairman of the Senate HELP Committee recently stated: "the overwhelming evidence of misleading, deceptive and even fraudulent conduct [of the for-profit education industry] documented by GAO cannot be attributed to anything but a systemic effort to enroll students at any cost."[20] In connection with

---

[18] One of largest for-profit schools, the University of Phoenix, was recently involved in an almost identical *qui tam* action, and settled the matter for $78.5 million. See Doug Lederman, *$78.5M Settles U. of Phoenix Case*, Inside Higher Ed, Dec. 15, 2009, *available at* http://www.insidehighered.com/news/2009/12/15/apollo, attached as Ex. B.

[19] See Stacy Khadaroo, *For-profit Colleges Hit with Claims of Fraud, Aggressive Recruiting*, The Christian Science Monitor, Aug. 4, 2010, *available at* http://www.csmonitor.com/USA/Education/2010/0804/For-profit-colleges-hit-with-claims-of-fraud-aggressive-recruiting, attached as Ex. C; Jennifer Epstein, *Method to Miller's Madness*, Inside Higher Ed, June 18, 2010, *available at* http://www.insidehighered.com/news/2010/06/18/credithour, attached as Ex. D.

[20] See Ex. A.

these hearings, the Senate HELP Committee has already contacted counsel for Relators regarding this litigation.[21]

As a result of this public controversy, in the first nine months of 2010 alone, Defendant CEC spent a half-million dollars on lobbyist trying to manipulate public debate about for-profit education companies' receipt of billions of dollars in taxpayer funds.[22]  Thus, Defendants' indication that they may seek a gag order in this civil action is no surprise.

That this matter is of great public concern, however, does not mean that this Court should avoid overseeing discovery and assign a Magistrate Judge to this matter.  Indeed, if it is relevant at all, the clear public controversy surrounding Defendants' activities calls for a District Court Judge – not a Magistrate Judge – to rule on any substantive issues that may arise in discovery.  The Court should therefore deny Defendants' Motion.

---

[21]   See Letter from Senate HELP Committee Chief Investigative Counsel Elizabeth Stein to Joe Wargo, Esq., attached hereto as Ex. E.  Similarly Counsel for Plaintiff was contacted – unilaterally – by the local television station referenced in Defs.' Mem. at 2.

[22]   See John Lauerman and Jonathan D. Salent, *For-Profit Colleges Double Spending to Beat Aid Rules*, Bloomberg Businessweek, Dec. 23, 2010, *available at* http://www.businessweek.com/news/2010-12-30/for-profit-colleges-double-spending-to-beat-aid-rules.html, attached as Ex. F.

### B. Defendants Have Not Shown Good Cause for Entry of Their Proposed Protective Order and Have Abused Past Protective Orders

Defendants' Motion does not ask this Court to enter a Protective Order. Indeed, in their motion, Defendants have not even referenced Fed. R. Civ. P. 26(c). Subsequent to filing this Motion, however, defense counsel has indicated their belief that the current motion amounts to a motion for entry of a protective order. By this count, to the extent Defendants claim this Motion seeks entry of Defendants' proposed protective order, this Motion must be denied.

It is well established that a party seeking entry of a protective order must show good cause pursuant to Fed. R. Civ. P. 26(c). *McCarthy v. Barnett Bank of Polk County*, 876 F.2d 89, 91 (11th Cir. 1989) ("Rule 26(c) allows the issuance of a protective order if good cause is shown.") (citations and internal quotations omitted); *Estate of Martin Luther King, Jr., Inc. v. CBS, Inc.*, No. CIV.1:96-CV-3052-WCO, 184 F. Supp. 2d 1353, 1362 (N.D. Ga. 2002) (O'Kelley, J.). Here, the Defendants have not shown good cause, or indeed <u>any</u> cause, as required by Fed. R. Civ. P. 26(c). Further, as Defendants are aware, while Relators do not oppose the entry of some manner of protective order, Relators strongly object to the entry of Defendants' proposed protective order. Absent consent or good cause shown, it would be reversible error to enter Defendants' proposed order. *See Chicago*

*Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1313 (11th Cir. 2001) (district court's decision regarding protective order remanded because district court did not determine good cause existed).

Moreover, Defendants' conduct in previous litigation requires this Court deny Defendants' proposed expansive protective order. In the AIU student lawsuits, when provided the opportunity to exercise discretion in identifying documents as confidential, Defendants improperly designated hundreds of thousands of documents as confidential, including <u>all</u> documents they produced in response to discovery requests in the Bowman Litigation.[23] Defendants went so far as to designate as "confidential" public documents from the Georgia Student Finance Commission regarding a state audit that resulted in AIU repaying more than $1 million in student financial aid dollars to the State of Georgia. These exact same records were provided to Relators by the Georgia Student Finance Commission in response to a Georgia Open Records Act request.

As a result of Defendants' actions, in the Bowman Litigation Relators' counsel opposed entry of a formal protective order allowing AIU and CEC to identify any document they wanted as "confidential." Defendants, however, sought entry of a protective order nearly identical to the one they seek in this

---

[23] <u>See</u> Pls.' Mot. for Sanctions and Incorporated Mem. of Law, at 1, filed in the Bowman Litigation, attached as Ex. G.

matter, allowing them unfettered ability to identify any documents as "confidential" which they found to be unflattering. Following full briefing and argument, Judge Glanville of Fulton County Superior Court rejected Defendants' proposed protective order. Instead, based on Defendants' established pattern of abuse, Judge Glanville entered an order specifying precisely the types of documents that Defendants could deem "confidential."[24]

Should the Court enter Defendants' Proposed Order, which was rejected by Judge Glanville after full briefing, Defendants undoubtedly will again abuse the discovery process by making grossly improper blanket designations. Given the importance of the terms of such an order, the Court should require full briefing on this matter, and not merely enter an order Defendants attached to an otherwise unrelated motion. In the absence of such briefing, however, Relators would consent to the entry of protective order similar to the order entered by Judge Glanville. Thus, to the degree the Court does not desire full briefing on this issue, Plaintiffs will consent to entry of the proposed protective order attached hereto as Exhibit I. *See McCarthy v. Barnett Bank of Polk County*, 876 F.2d at 92 (district court may find good cause exists when parties consent to "umbrella" protective order). In either case, because Defendants have failed to establish good cause for

---

[24] See Protective Order in Bowman Litigation, Ex. H.

the entry of a protective order, the Court must deny Defendants' Motion to the degree Defendants seek entry of their Proposed Protective Order.

### III.     **CONCLUSION**

For the foregoing reasons, Relators respectfully request the Court deny Defendants' Motion for Assignment of Case to Magistrate Judge for Supervision of Discovery, Status Conference, and Entry of a Protective Order.  Should the Court refer discovery matters in this action to a Magistrate Judge, Relators respectfully request the Court retain authority over any matter related to the entry of a protective order and gag orders in this action.

Respectfully submitted this 7th day of March, 2011.

> /s/ David M. Pernini
> Joseph D. Wargo
> Georgia Bar No. 738764
> jwargo@wargofrench.com
> David M. Pernini
> Georgia Bar No. 572399
> dpernini@wargofrench.com
> WARGO & FRENCH LLP
> 1170 Peachtree Street, NE
> Suite 2020
> Atlanta, GA  30309
> (404) 853-1500 (telephone)
> (404) 853-1501 (facsimile)
> *Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

This certifies that I have this day electronically filed the foregoing **RELATORS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR ASSIGNMENT OF CASE TO MAGISTRATE JUDGE FOR SUPERVISION OF DISCOVERY, STATUS CONFERENCE, AND ENTRY OF A PROTECTIVE ORDER** with the Clerk of Court using the CM/ECF System, which will automatically send e-mail notification of such filing to the following attorneys of record:

> Brandon R. Williams
> John Ludlow Latham
> Judson Graves
> William H. Jordan
> William R. Mitchelson, Jr.
> ALSTON & BIRD LLP
> 1201 West Peachtree Street
> One Atlantic Center
> Atlanta, Georgia 30309-3424
>
> Eric S. Fisher
> Michael Eric Ross
> TAYLOR ENGLISH DUMA LLP
> Suite 400
> 1600 Parkwood Circle
> Atlanta, Georgia 30339
>
> *Attorneys for Defendants*

and by regular U.S. mail to:

>Sally B. Molloy
>U.S. Attorney's Office - ATL
>75 Spring Street, S.W.
>600 United States Courthouse
>Atlanta, Georgia 30303
>
>Jay Majors
>Trial Attorney
>United States Department of Justice
>Civil Division - Commercial Litigation Branch - Civil Frauds
>Patrick Henry Building
>601 D Street, N.W. - Room 9022
>Washington, D.C. 20004
>
>*Attorney for United States of America*

This 7th day of March, 2011.

/s/ David M. Pernini